# Syllabus

Chief Justice:
Bridget M. McCormack

Chief Justice Pro Tem:
David F. Viviano

Justices:
Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Kathryn L. Loomis

PEOPLE v CARTER

Docket No. 156606. Argued on application for leave to appeal March 7, 2019. Decided May 7, 2019.

Alonzo Carter was convicted following a jury trial in the Wayne Circuit Court, Vonda R. Evans, J., of assault with intent to do great bodily harm (AWIGBH), MCL 750.84; felon in possession of a firearm (felon-in-possession), MCL 750.224f; intentional discharge of a firearm at a dwelling, MCL 750.234b; felonious assault, MCL 750.82; and carrying or possessing a firearm when committing or attempting to commit a felony (felony-firearm) second offense, MCL 750.227b. In January 2015, defendant was involved in a verbal altercation with Lawrence Sewell outside Sewell's apartment. Later that evening, defendant returned to Sewell's apartment and attempted to lure Sewell to the door by impersonating a maintenance worker. Sewell looked through the door's peephole and saw defendant waiting outside wearing a ski mask and holding a firearm. Sewell did not allow defendant to enter, and defendant fired three shots through the apartment door at chest level. Two shots skipped off the apartment floor and through a window, while another punctured an air mattress on which an infant child slept. None of the apartment's occupants was shot. Defendant was convicted as a fourth-offense habitual offender, and the trial court sentenced him to concurrent prison terms of 5 to 10 years for AWIGBH, 1 to 5 years for felon-in-possession, 1 to 10 years for intentional discharge of a firearm at a dwelling, and 1 to 4 years for felonious assault, all to be served consecutively to a two-year prison sentence (later corrected to a five-year prison sentence) for felony-firearm. Defendant moved to remand in the Court of Appeals, objecting to the assessment of points under Prior Record Variable (PRV) 1 (prior high severity felony convictions), MCL 777.51; Offense Variable (OV) 4 (psychological injury to the victim), MCL 777.34; and OV 12 (contemporaneous felonious acts), MCL 777.42. The Court of Appeals denied the motion. Defendant appealed in the Court of Appeals, contesting the trial court's scoring of the three sentencing variables. The prosecution conceded error with regard to the points assessed under OV 4 and PRV 1, but the prosecution defended the 10 points assessed under OV 12. In an unpublished per curiam opinion issued on June 27, 2017 (Docket No. 331142), the Court of Appeals, JANSEN, P.J., and MURPHY and BORRELLO, JJ., affirmed the scoring of OV 12, reasoning that each pull of the trigger was a separate act and that because only one act was needed to convict defendant, the other two acts of pulling the trigger constituted contemporaneous felonious criminal acts. Because removal of the points that were incorrectly assessed under OV 4 and PRV 1 did not affect the applicable guidelines minimum sentence range, the Court of Appeals did not order resentencing. Defendant sought leave to

appeal in the Supreme Court, which ordered and heard oral argument on whether to grant the application or take other action. 501 Mich 1089 (2018).

In a unanimous per curiam opinion, the Supreme Court, in lieu of granting leave to appeal, *held*:

OV 12 is governed by MCL 777.42, which states that it is appropriate to assess an offender 10 points when two contemporaneous felonious criminal acts involving crimes against a person were committed. MCL 777.42(2)(a) provides that when assessing points under OV 12, a felonious criminal act is contemporaneous if both of the following circumstances exist: (*i*) the act occurred within 24 hours of the sentencing offense, and (*ii*) the act has not and will not result in a separate conviction. Because the Legislature used the word "act" in one portion of MCL 777.42(2)(a)(*i*) and the phrase "sentencing offense" later in the same sentence, the Legislature intended to draw a distinction between the two; what matters is whether the "sentencing offense" can be separated from other distinct "acts." In the context of OVs, "sentencing offense" is defined as the crime of which the defendant has been convicted and for which he or she is being sentenced. In this case, the sentencing offense was AWIGBH, and a finding that two of the gunshots were not part of the sentencing offense could not be supported by the evidence because the record showed that the prosecution relied on all three gunshots as evidence of defendant's intent to inflict great bodily harm. Those same three gunshots could not then be used to establish separate "acts" that occurred within 24 hours of the "sentencing offense" under MCL 777.42(2)(a)(*i*). Accordingly, it was inappropriate for the Court of Appeals to distinguish two gunshots from the conduct constituting the sentencing offense. Importantly, this holding was limited to the facts of this case; circumstances might exist under which multiple gunshots may constitute separate "acts" that are distinguishable from the "sentencing offense," but this case did not present those circumstances. Finally, reduction of defendant's variable score to account for the improper assessment of points under OV 12 altered the recommended guidelines minimum sentence range; although defendant's sentence fell within the proper guidelines range, defendant was entitled to resentencing under accurately scored offense variables because the scoring error was relied upon by the trial court and the issue was properly preserved.

Court of Appeals opinion reversed to the extent that it upheld the assessment of points under OV 12, trial court's judgment of sentence vacated, and case remanded to the trial court for resentencing on the basis of accurately scored offense variables.

©2019 State of Michigan

# OPINION

Chief Justice:
Bridget M. McCormack

Chief Justice Pro Tem:
David F. Viviano

Justices:
Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

FILED May 7, 2019

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellee,

v

No. 156606

ALONZO CARTER,

     Defendant-Appellant.

PER CURIAM.

Defendant, Alonzo Carter, fired three shots through the door of an apartment he knew to be occupied. He was convicted by a jury of, among other things, assault with intent to do great bodily harm (AWIGBH).[1] At issue in this case is whether each separate pull of the trigger constitutes a separate "act" under Offense Variable (OV) 12 (contemporaneous felonious acts).[2] Because the evidence does not support the conclusion

---

[1] MCL 750.84.

[2] MCL 777.42.

that the jury considered only one shot when deliberating over the elements of AWIGBH, we hold that it was inappropriate to assess defendant 10 points under OV 12. Further, because reducing defendant's OV score to rectify this error would reduce the applicable guidelines range, resentencing is required.[3]

In January 2015, defendant lived in the same apartment building as Lawrence Sewell. A young woman and her infant child lived with Sewell as well. On January 11, 2015, defendant and Sewell were involved in a verbal altercation outside Sewell's apartment, but it did not escalate any further at that time. That evening, however, defendant returned to Sewell's apartment and attempted to lure Sewell to the door by impersonating a maintenance worker. Sewell looked through the door's peephole and saw defendant waiting outside wearing a ski mask and holding a firearm. Sewell did not allow defendant to enter, and defendant fired three shots through the apartment door at chest level. Two shots skipped off the apartment floor and through a window, while another punctured an air mattress on which the infant child slept. None of the apartment's occupants was shot.

Defendant was identified as the shooter and charged as a fourth-offense habitual offender with assault with intent to murder (AWIM),[4] AWIGBH,[5] felon in possession of a firearm (felon-in-possession),[6] intentional discharge of a firearm at a dwelling,[7] felonious

---

[3] See *People v Francisco*, 474 Mich 82, 89-90; 711 NW2d 44 (2006).

[4] MCL 750.83.

[5] MCL 750.84.

[6] MCL 750.224f.

[7] MCL 750.234b.

assault,[8] and carrying or possessing a firearm when committing or attempting to commit a felony (felony-firearm) second offense.[9] A jury acquitted defendant of AWIM but convicted him of all other charges.

At sentencing, defense counsel did not make any objections or request corrections to the scoring of the sentencing guidelines. Accordingly, the trial court sentenced defendant to concurrent prison terms of 5 to 10 years for AWIGBH, 1 to 5 years for felon-in-possession, 1 to 10 years for intentional discharge of a firearm at a dwelling, and 1 to 4 years for felonious assault, all to be served consecutively to a two-year prison sentence for felony-firearm.[10]

Defendant filed a motion to remand in the Court of Appeals, objecting to the assessment of points under Prior Record Variable (PRV) 1 (prior high severity felony convictions),[11] OV 4 (psychological injury to the victim),[12] and OV 12. The motion was denied. In his brief on appeal, defendant continued to contest the trial court's scoring under these three sentencing variables. The prosecution conceded error with regard to the points assessed under OV 4 and also conceded that PRV 1 should have been scored at 50 points,

---

[8] MCL 750.82.

[9] MCL 750.227b.

[10] Shortly after sentencing, the parties stipulated on the record that defendant had been improperly sentenced on the felony-firearm conviction. The trial court resentenced defendant on that count to the mandatory consecutive prison term of five years.

[11] MCL 777.51.

[12] MCL 777.34.

3

rather than the 75 points assessed in the trial court. Nonetheless, the prosecution continued to defend the 10 points assessed under OV 12.

In an unpublished per curiam opinion, the Court of Appeals affirmed the scoring of OV 12, reasoning that "[e]ach time defendant pulled the trigger was a separate act, and only one [act] was needed to convict him. Thus, the other two acts of pulling the trigger would be contemporaneous felonious criminal act[s] . . . ."[13] Because removal of the points that were incorrectly assessed under OV 4 and PRV 1 did not affect the applicable guidelines range, the panel did not order resentencing.[14] Defendant now seeks leave to appeal in this Court, once again challenging the 10-point assessment under OV 12 and seeking resentencing. We granted oral argument to determine whether to grant the application or take other action.[15]

A trial court's factual determinations at sentencing are reviewed for clear error and need only be supported by a preponderance of the evidence.[16] Whether the facts, as found, are adequate to warrant the assessment of points under the pertinent OVs and PRVs is a question of statutory interpretation, which this Court reviews de novo.[17]

---

[13] *People v Carter*, unpublished per curiam opinion of the Court of Appeals, issued June 27, 2017 (Docket No. 331142), p 3.

[14] *Id*. Defendant moved for reconsideration, and the Court of Appeals denied defendant's motion in August 2017. *People v Carter*, unpublished order of the Court of Appeals, entered August 15, 2017 (Docket No. 331142).

[15] *People v Carter*, 501 Mich 1089 (2018). See also MCR 7.305(H)(1).

[16] *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

[17] *Id*.

OV 12 is governed by MCL 777.42, which states that it is appropriate to assess an offender 10 points when "[t]wo contemporaneous felonious criminal acts involving crimes against a person were committed."[18] In assessing any points under this particular variable, the pertinent portion of MCL 777.42 provides:

> (2) All of the following apply to scoring offense variable 12:
>
> (a) A felonious criminal act is contemporaneous if both of the following circumstances exist:
>
> (*i*) The *act* occurred within 24 hours of the *sentencing offense*.
>
> (*ii*) The act has not and will not result in a separate conviction.[19]

The prosecution would have us conclude that each gunshot constituted a separate "act" and that the "sentencing offense"[20] was premised exclusively on a single shot. Because the Legislature used the word "act" in one portion of MCL 777.42(2)(a)(*i*) and the phrase "sentencing offense" later in the same sentence, we must presume it intended to draw a distinction between the two.[21] Nevertheless, the Legislature does not define "sentencing offense" or "act" for purposes of assessing points under this or *any* offense variable.

---

[18] MCL 777.42(1)(b).

[19] MCL 777.42(2)(a) (emphasis added).

[20] See *id.*

[21] See *US Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 14; 795 NW2d 101 (2009) ("When the Legislature uses different words, the words are generally intended to connote different meanings.").

The parties focus much of their argument on whether each separate discharge of defendant's firearm could have constituted a different assaultive offense; but as the Court of Appeals held in *People v Light*, a determination of whether an offender has engaged in multiple "acts" for purposes of OV 12 does not depend on whether he or she could have been charged with other offenses for the same conduct.[22] What matters, instead, is whether the "sentencing offense" can be separated from other distinct "acts."[23] This Court has previously defined "sentencing offense" in the context of OVs as "the crime of which the defendant has been convicted and for which he or she is being sentenced."[24] Thus, the "sentencing offense" which primarily informs our decision is AWIGBH, for which defendant received a controlling term of 5 to 10 years' imprisonment. We have therefore examined the record to determine whether factual support for defendant's AWIGBH conviction was established on the basis of all three gunshots or only one.

The most revealing portion of the record pertains to the prosecution's closing argument:

> So, for the first count of assault with intent to murder, I have to show you, first, that the defendant tried to physically injure another person.

> I submit to you that that is obvious. *If you shoot three times*, through a door, chest level, right after the latch on the door has clicked, you are trying to physically injure another person.

---

[22] *People v Light*, 290 Mich App 717, 725-726; 803 NW2d 720 (2010).

[23] See *id*.; MCL 777.42(2)(a)(*i*).

[24] *People v McGraw*, 484 Mich 120, 122 n 3; 771 NW2d 655 (2009).

Second, that when the defendant committed the assault, he had the ability to cause an injury, or at least believed that he had the ability to cause an injury.

*Three shots* to the chest is the ability to cause an injury to somebody. There is no doubt but that shooting a gun at somebody is going to injure them.

* * *

I submit to you that it's obvious, his intent, by waiting until someone is at the door, and hearing the latch click, and then *shooting three times*, chest level, through that door; that he was trying to kill the person that earlier in the day he told to stay out of his . . . business.

Now, the second count, it's a lesser. It's called assault with intent to do great bodily harm less than murder. You can consider this if for some reason you don't think his intent was murder. It's basically the same charge, other than you think he intended to commit great bodily harm less than murder instead of murder.

But, again, as I submitted to you, *three shots*, chest level, through a door. You're trying to kill somebody. This count two is something you can consider, instead, if you think his intent was to commit great bodily harm less than murder.[25]

Given that, in this case, the prosecution relied on all three gunshots as evidence of defendant's intent to commit murder or inflict great bodily harm, a finding that two of the gunshots were not part of the sentencing offense cannot be supported by the evidence.[26] Consequently, it was inappropriate for the Court of Appeals to distinguish two gunshots from the conduct constituting the "sentencing offense."[27]

---

[25] Emphasis added.

[26] See *Hardy*, 494 Mich at 438.

[27] See *id.*

The prosecution insists that the 10-point assessment under OV 12 remains appropriate because defendant could have been charged with separate offenses relating to the young woman or her infant child. It might be true that defendant could have been charged with assaultive offenses relating to the woman and her child,[28] but this does not resolve the relevant inquiry. As previously stated, the prosecution relied on all three gunshots to establish the intent element of the "sentencing offense." Those same three gunshots cannot then be used to establish separate "acts" that occurred within 24 hours of the "sentencing offense" under MCL 777.42(2)(a)(*i*).[29]

We limit our holding to these facts because the prosecution relied on all three gunshots to establish an element of the "sentencing offense." By no means do we suggest that there can be no circumstances under which multiple gunshots may constitute separate "acts" that are distinguishable from the "sentencing offense." But we are not confronted with such facts in this case.

Reducing defendant's variable score to account for the improper assessment of points under OV 12 alters the recommended minimum guidelines range.[30] Although

---

[28] Cf. *People v Raher*, 92 Mich 165, 166; 52 NW 625 (1892) ("It has been held that where a prisoner fired a gun in the direction of a crowd he was guilty of assault upon each.").

[29] To hold otherwise would render Subdivision (a)(*i*) a nullity as applied in this case, and we will not interpret a statute in such a manner as to treat any word as nugatory or mere surplusage. See *Badeen v PAR, Inc*, 496 Mich 75, 81; 853 NW2d 303 (2014). Further, because the prosecution failed to demonstrate any additional "acts" that occurred within 24 hours of the "sentencing offense," there is no need to consider whether such "acts" have or will result in a separate conviction as required under MCL 777.42(2)(a)(*ii*).

[30] AWIGBH is a Class D offense. See MCL 777.16d. According to his presentence investigation report, defendant was initially assessed 127 points under the pertinent PRVs and 60 points under the pertinent OVs. After the Court of Appeals held that defendant

defendant's sentence falls within the proper guidelines range, defendant is entitled to resentencing under accurately scored offense variables because the scoring error was relied upon by the trial court and the issue was properly preserved.[31] We therefore reverse the Court of Appeals' unpublished per curiam opinion to the extent that it upheld the assessment of points under OV 12, vacate the trial court's judgment of sentence, and remand the case to the trial court for resentencing on the basis of accurately scored offense variables.

Bridget M. McCormack
Stephen J. Markman
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

---

should have been assessed 25 fewer points under PRV 1 and zero points under OV 4, defendant's PRV and OV assessments sat at 102 and 50 points, respectively. Because defendant was convicted as a fourth-offense habitual offender, see MCL 769.12, his minimum sentence range under the guidelines was 38 to 152 months' imprisonment. See MCL 777.65. With the reduction of points that would result from an order consistent with this analysis, defendant's recommended minimum sentence range would be 34 to 134 months' imprisonment. See *id*.

[31] *Francisco*, 474 Mich at 92 ("Because defendant's sentence here is based upon an inaccurate calculation of the guidelines range and is, therefore, inconsistent with the law, defendant is entitled to be resentenced."). Notably, as stated earlier, defendant preserved his challenge to the assessment of points under OV 12 by filing a proper motion for remand. See *id*. at 88-91.