*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

LILLIAN DENNIQUA PINCKNEY,

      Defendant-Appellant.

UNPUBLISHED
October 17, 2019

No. 344201
Wayne Circuit Court
LC No. 17-008876-02-FC

Before: METER, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right her bench trial convictions, under an aiding and abetting theory, of two counts of assault with intent to do great bodily harm less than murder (AIGBH), MCL 750.84,[1] one count of discharging a firearm from a vehicle, MCL 750.234a, one count of carrying a concealed weapon, MCL 750.227, and three counts of possessing a firearm during the commission of a felony (felony-firearm), MCL 750.227b(a). On appeal, defendant challenges only the trial court's calculation of her sentencing-guidelines range. We conclude that the trial court erred by scoring offense variable (OV) 12 at ten points and remand this case for further proceedings consistent with this opinion.

## I. BACKGROUND

This case arises from a shooting incident on September 20, 2017. The shooting was the result of a dispute between defendant and Ciara Burke that began the day before, following an argument over child support between defendant and Dyron Sherman, who is Burke's cousin and the father of two of defendant's children.

---

[1] The prosecution charged defendant with assault with intent to commit murder, MCL 750.83, but the trial court convicted defendant of the lesser crime of AIGBH.

-1-

The day of the shooting, Burke and at least one passenger were driving in Burke's vehicle when a blue sport utility vehicle (SUV) driven by defendant gave chase. The chase traversed several streets and at least one witness estimated that it lasted at least two minutes. Defendant's codefendant, Jamie Foster, testified against defendant at trial pursuant to a sentencing agreement with the prosecution. Foster testified that he was the front-seat passenger of the SUV driven by defendant during the chase and that he leaned out the window of the SUV to shoot at Burke's vehicle. According to Foster, defendant provided him with the gun. Foster admitted shooting at Burke's car four times during the chase, predominantly when the vehicles made turns. None of the gunshots fired injured Burke, any passenger in either vehicle, or any bystander. Burke was eventually able to "lose" the SUV and police officers stopped the SUV shortly after the chase ended, arresting defendant and Foster.

Following a bench trial, the trial court convicted defendant of the aforementioned crimes under an aiding and abetting theory. The trial court sentenced defendant to prison terms of one to ten years for each AIGBH and discharging-a-weapon conviction, one to five years for the concealed-weapon conviction, and two years for each felony-firearm conviction. This appeal followed.

## II. ANALYSIS

Defendant does not challenge her convictions on appeal. Rather, defendant's appeal is limited to the sentence imposed, specifically the scoring of offense variable (OV) 12. "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Lampe*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 342325); slip op at 2 (internal citation and quotation marks omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

OV 12 scores for contemporaneous felonious conduct. MCL 777.42. The trial court scored OV 12 at ten points, indicating that "[t]wo contemporaneous felonious criminal acts involving crimes against a person were committed." MCL 777.42(1)(b). On appeal, defendant argues that the trial court should have scored OV 12 at zero points because the four gunshots Foster fired were part of a continuous course of conduct supporting the two sentencing offenses. The prosecution disagrees, arguing that only two gunshots were necessary to support the convictions, leaving the remaining two gunshots available for scoring under OV 12. We conclude that the trial court erred by scoring OV 12 at ten points.

This case is not the first to present the question whether separate gunshots can constitute contemporaneous felonious acts. Rather, the question was recently addressed by our Supreme Court in *People v Carter*, 503 Mich 221; 931 NW2d 566 (2019). In that case, the defendant was involved in a verbal altercation with a man and that evening went to the man's apartment and knocked on the door, pretending to be a maintenance worker. *Id*. at 224. When the defendant heard the latch click on the door, he fired three gunshots through the door at chest level. *Id*. at 224, 228. A jury convicted the defendant, *inter alia*, of one count of AIGBH and the trial court

scored OV 12 at ten points, indicating two contemporaneous felonies. *Id*. at 224-225. In an unpublished per curiam opinion, this Court affirmed the ten-point score, reasoning that "[e]ach time defendant pulled the trigger was a separate act, and only one [act] was needed to convict him. Thus, the other two acts of pulling the trigger would be contemporaneous felonious criminal act[s]." *Id*. at 225, quoting *People v. Carter*, unpublished per curiam opinion of the Court of Appeals, issued June 27, 2017 (Docket No. 331142), p. 3.

Our Supreme Court noted that "what matters" for the purpose of calculating OV 12 under these circumstances "is whether the sentencing offense can be separated from other distinct acts." *Id*. at 227 (internal quotation marks omitted). Our Supreme Court then reversed this Court, noting that, because the prosecutor relied on all three gunshots to justify the AIGBH conviction "as evidence of defendant's intent to commit murder or inflict great bodily him," all three gunshots were part of the sentencing offense. *Id*. at 229. Accordingly, our Supreme Court concluded that it was inappropriate for this Court "to distinguish two gunshots from the conduct constituting the sentencing offense." *Id*. (internal quotation marks omitted). Our Supreme Court, however, limited its holding to the facts before it, noting that, it was not suggesting "that there can be no circumstances under which multiple gunshots may constitute separate acts that are distinguishable from the sentencing offense." *Id*. at 229-230.

The salient factual difference between this case and *Carter* is that the *Carter* defendant fired three gunshots nearly simultaneously, whereas in this case Foster fired four gunshots over the course of several minutes. While a temporal separation may, under the right circumstances, be sufficient to distinguish contemporaneous acts from the sentencing offense, the limited temporal separation here is not. As considered by our Supreme Court in *Carter*, the relevant question for the purposes of OV 12 is not whether the defendant's conduct (or, as in this case, the conduct of a principle offender) can be separated into distinct acts; rather, the relevant question is whether the contemporaneous acts are distinguishable from the sentencing offense. The question is not merely factual, but evidentiary. Therefore, our resolution of this issue requires us to analyze the underlying factual circumstances as well as the prosecution's theories supporting the conviction.

Here, there are indeed four distinct acts. Unlike *Carter*, where the defendant fired a rapid succession of three gunshots, Foster fired four gunshots over the course of several minutes, apparently taking aim at strategic points during the chase. That the acts are distinct, however, does not mean that they are separable from the sentencing offenses. It is important to note that defendant's AIGBH convictions do not specifically relate to two of the four gunshots; rather, defendant was convicted of one count of AIGBH for aiding and abetting Foster's assault on Burke and another AIGBH count for aiding and abetting Foster's assault on another passenger in Burke's vehicle. In other words, the number of charges corresponded to the number of victims, not the number of assaults or gunshots. At trial, the prosecution did not distinguish between the gunshots that were fired at Burke and the gunshots fired at the other passenger, nor did it distinguish between the minimum two gunshots necessary to commit AIGBH and the additional gunshots fired or assaults committed thereby. Instead, during closing argument the prosecutor referenced the felonious act in the singular as the "shooting." Similarly, the trial court did not parse out the individual gunshots in its decision, noting simply that defendant was guilty, under an aiding and abetting theory, of one count of AIGBH for the assault on Burke and another count of AIGBH for the assault on the passenger.

We recognize that two gunshots may have been sufficient to convict defendant of two counts of AIGBH. Nonetheless, we must be cognizant of the fact that AIGBH is a specific-intent crime: the perpetrator must both commit the assault *and* do so with an intent to commit great bodily harm. Where neither the prosecutor nor the trial court made any attempt to distinguish between the four gunshots as relevant to Foster's intent, we can only assume that the trial court considered each gunshot as evidence of intent during its deliberations on the two charges. See *Carter*, 503 Mich at 229. In other words, the four gunshots collectively supported that Foster—and defendant as his accomplice—intended to harm the two victims. Therefore, we are unable to conclude that any gunshot was separable from the sentencing offenses.[2] Accordingly, we conclude that the trial court clearly erred by finding that defendant committed (or, stated otherwise, aided and abetted the commission of) two uncharged contemporaneous felonies.[3]

We reverse the trial court's ten-point score for OV 12 and remand this case for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle

---

[2] Our conclusion may have differed had the case been presented differently to the factfinder. For instance, had the prosecutor argued that Foster formed a new intent to harm as he repositioned for each gunshot—and that any two of the four gunshots could be used to find Foster guilty of the two charges because Foster, in fact, committed four assaults—the case may have passed muster under *Carter*. That argument, however, was not presented to the trial court; therefore, we may only conclude that the aggregate of the four gunshots was part of the intent element of the two charges.

[3] We recognize that defendant may have waived this claim of error when his counsel stated that he was "satisfied" with the guidelines calculation. See *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019) ("A defendant waives an issue by expressly approving of the trial court's action."). Nonetheless, given that the parties did not have the benefit of *Carter* at the time of defendant's sentencing—and recognizing that several unpublished opinions of this Court had previously supported the prosecution's theory—we find it appropriate to address this issue despite the apparent waiver.