*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TYWANE ALEXANDER COLEMAN,

Defendant-Appellant.

UNPUBLISHED
February 11, 2021

No. 349554
Wayne Circuit Court
LC No. 19-000949-01-FC

Before: FORT HOOD, PJ., and GADOLA and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his sentences related to jury trial convictions of intentional discharge of a firearm at a dwelling or potentially occupied structure, MCL 750.234b; four counts of assault with a dangerous weapon (felonious assault), MCL 750.82; and five counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] Defendant was sentenced to 54 to 120 months' imprisonment for his intentional discharge of a firearm at a dwelling conviction, 24 to 48 months imprisonment for each of his felonious-assault convictions, and 24 months for each of his felony-firearm convictions. On appeal, defendant argues the trial court erred in assessing 25 points for offense variable (OV) 1 on the basis that defendant discharged a firearm at or toward an individual. We affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

This case arises from a shooting incident at an apartment building on New Year's Eve 2018. Sommar Hutchinson-Foster (Hutchinson), Hutchinson's infant child, Daejanay Pugh, Pugh's minor child, and Kierra Harris were at Pugh's second-floor apartment. While at the apartment, Hutchinson had been arguing with defendant, her child's father, over the phone. Shortly thereafter, there was a knock at the door, and Pugh looked through the peephole and

---

[1] Defendant was acquitted of three counts of assault with intent to murder, MCL 750.83, three counts of assault with intent to do great bodily harm less than murder, MCL 750.84, and six counts of felony-firearm.

recognized that it was defendant. Hutchinson stepped outside and continued arguing with defendant. After several minutes, four gunshots were heard and bullets entered the apartment. Hutchinson immediately came back into the apartment and told the others to call the police. Thereafter, both Pugh and Hutchinson called the police at the same time. Hutchinson noted to the 911 operator that defendant had fired a gun at her and the apartment. Responding police officers arrived and witnessed bullet holes in the front door, wall, and ceiling of the apartment. They also found shell casings on the stairwell outside the apartment. Hutchinson informed the officers that defendant fired a gun at her and the apartment.[2] Hutchinson also received a phone call from defendant while the officers were present in which Hutchinson asked defendant why he had shot at her.

At trial, Hutchinson testified contrary to her statements on the day of the incident. Hutchinson testified that she briefly spoke to defendant at the apartment, watched defendant leave before the gunshots, and never saw defendant with a gun. Hutchinson testified that she heard gunshots after defendant walked away, although she did not dispute Harris and Pugh's testimony that defendant had shot at the apartment because she thought they saw defendant shoot at her. Hutchinson also admitted that she stated defendant had shot at her on the day of the incident. Lastly, Hutchinson testified that she was in a relationship with defendant on the day of the incident, was still in a relationship with defendant at the time of trial, was financially and emotionally dependent on defendant, regularly communicated with defendant after the incident, and attempted to assist defendant in paying Pugh to not testify against defendant at trial.

At the conclusion of the jury trial, defendant was convicted as noted above. At sentencing, defendant argued that OV 1 should have been assessed 15 points rather than 25 points. Conversely, the prosecution argued 25 points were properly assessed because defendant fired the gun toward Hutchinson and the wall of the apartment where people were known to be inside. The trial court agreed, and proceeded to sentence defendant as noted above.

## II. ANALYSIS

Defendant argues the trial court erred in finding that defendant discharged a firearm at or toward an individual and erred in assessing 25 points for OV 1 on that basis. We disagree.

"A trial court's factual determinations at sentencing are reviewed for clear error and need only be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to warrant the assessment of points under the pertinent OVs and PRVs is a question of statutory interpretation, which this Court reviews de novo." *People v Carter*, 503 Mich 221, 226; 931 NW2d 566 (2019). Likewise, this Court reviews a defendant's constitutional challenges, including due-process rights, de novo. *People v Skinner*, 502 Mich 89, 99; 917 NW2d 292 (2018); *People v Borgne*, 483 Mich 178, 184; 768 NW2d 290 (2009).

The sentencing court may consider judge-found facts to calculate the guidelines range and "the highest number of points possible *must be* assessed for all OVs." *People v Lockridge*, 498

___

[2] According to Hutchinson, defendant confronted her because she was drinking with her friends and because he thought there were men in Pugh's apartment.

Mich 358, 392 n 28; 870 NW2d 502 (2015).  However, "when a jury has specifically determined that the prosecution has not proven beyond a reasonable doubt that a defendant engaged in certain conduct, the defendant continues to be presumed innocent."  *People v Beck*, 504 Mich 605, 626; 939 NW2d 213 (2019).  "[C]onduct that is protected by the presumption of innocence may not be evaluated using the preponderance-of-the-evidence standard without violating due-process."  *Id*. at 627.  As a result, "reliance on acquitted conduct at sentencing is barred by the Fourteenth Amendment."  *Id*. at 629.

OV 1 concerns the aggravated use of a weapon.  MCL 777.31(1); *People v Morson*, 471 Mich 248, 256; 685 NW2d 203 (2004).  Specifically, the trial court must assess points for the circumstance applicable to defendant's conduct as follows:

> (a)      a firearm was discharged at or toward a human being or a victim was cut or stabbed with a knife or other cutting or stabbing weapon…………………….25 points
>
> * * *
>
> (c)      a firearm was pointed at or toward a victim or the victim had a reasonable apprehension of an immediate battery when threatened with a knife or other cutting or stabbing weapon……………………………………………….…15 points
>
> (d)      the victim was touched with any other type of weapon……………10 points
>
> * * *
>
> (f)      no aggravated use of a weapon occurred……………………………0 points
>
> [MCL 777.31(1).]

Defendant contends that 25 points could not be assessed for OV 1 because the jury did not conclude that defendant fired his weapon at or toward specific individuals with the intent to harm them.  This argument is unpersuasive.  OV 1 is to be assessed points where a defendant discharges a firearm "toward a human being."  MCL 777.31(1)(a).  Our Supreme Court has specifically noted that, when used as a preposition, "toward" means " 'in the direction of' and 'with respect to, as regards.' "  *Grievance Adm'r v Fieger*, 476 Mich 231, 250-251; 719 NW2d 123 (2006), quoting *Random House Webster's College Dictionary* (1997).  See also *People v Rodriguez*, unpublished per curiam opinion of the Court of Appeals, issued October 21, 2014 (Docket No. 315216) (referring to *Random House Webster's College Dictionary* (2001) and defining "toward" as "in the direction of" or "in the area or vicinity of; near").

The jury convicted defendant of intentionally discharging a firearm at a building and four counts of felonious assault against Hutchinson, Pugh, Harris, and Pugh's child.  Defendant's convictions indicate there was sufficient evidence that defendant did (1) "intentionally [discharge] a firearm at a facility that he . . . [knew or had] reason to believe [was] a dwelling or a potentially occupied structure" and (2) "assault[ed] another person with a gun[.]"  MCL 750.234b(1); MCL

750.82(1).[3]  With that in mind, we cannot discern any error from the trial court's application of the statute, nor any clear error in its assessment of the facts.  We conclude that a preponderance of the evidence supports the finding that defendant discharged his weapon at or toward human beings, and the trial court did not err in assessing 25 points for OV 1.[4]

Affirmed.

/s/ Karen M. Fort Hood
/s/ Michael F. Gadola
/s/ Anica Letica

---

[3] As noted previously, the evidence established that defendant discharged a firearm at or toward Hutchinson and the apartment where Harris, Pugh, Pugh's child, and Hutchinson's child were. After the gunshots, Hutchinson ran back into the apartment, stating to Harris and Pugh that defendant had shot at her.  Hutchinson also told a 911 operator and responding officer that defendant had shot at her.  Pugh and Harris testified that defendant shot at the apartment, stating they heard the gunshots and saw the bullets enter the apartment almost simultaneously with Hutchinson and defendant's argument ending.  Further, there were bullet holes in the apartment, including in the front door to the apartment where Hutchinson and defendant stood during their argument and in the ceiling of the apartment, as well as shell casings on the stairwell leading to the apartment.

[4] As an aside, we note the implication from defendant's brief that 25 points could not be assessed because defendant was acquitted by the jury of assault with intent to murder or do great bodily harm.  However, defendant was also convicted by the jury as noted above, and in addition to that, a preponderance of the evidence supported the trial court's finding that defendant discharged his weapon toward human beings. Moreover, nothing in MCL 777.31(1)(a) indicates that the assessment of 25 points requires a defendant to fire upon specific individuals such that he may also be guilty of assault with intent to murder or do great bodily harm.

-4-