*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

LAMON TERRILL PORE, also known as TERRILL
LAMON PORE,

       Defendant-Appellant.

UNPUBLISHED
April 29, 2021

No. 351093
Wayne Circuit Court
LC No. 19-001412-01-FH

Before: BECKERING, P.J., and FORT HOOD and RIORDAN, JJ.

PER CURIAM.

Following a bench trial, defendant, Lamon Terrill Pore, was convicted of false pretenses ($1,000 or more but less than $20,000), MCL 750.218(4)(a), and uttering and publishing a document affecting real property, MCL 750.249b. The trial court sentenced him as a second-offense habitual offender, MCL 769.10, to concurrent terms of 1 to 7½ years in prison for the false pretenses conviction and 2 to 21 years in prison for the uttering and publishing conviction. Defendant appeals his convictions and sentences as of right, arguing that his trial counsel was ineffective and that the minimum sentence guidelines range was miscalculated. We affirm defendant's convictions, but remand for resentencing.

## I. RELEVANT FACTS

This case involves the fraudulent sale of a property located in Detroit, Michigan. In 2016, a quitclaim deed was recorded purporting to transfer the property from grantor Leo E. Randolph to Wise Commercial Solutions, LLC, a business owned by Juaron Wise. However, Randolph had already transferred the property to his great-niece and others in 2002, and then passed away in 2011. Thus, at the time of the 2016 deed creation, Randolph had been dead for 5 years. The notary whose stamp appeared on the 2016 deed testified that she had not witnessed the deed and that her stamp had been stolen.

At the time of the transaction, Wise worked at a bank where defendant was a frequent business customer, and the two men had a good relationship. Wise testified that he and defendant were talking about properties one day at the bank, and Wise told defendant he was going to go to

the land bank. Defendant purportedly said he had a connection at the land bank and could help Wise get a property without having to go through the "red tape." Subsequently, defendant offered Wise a list of four or five available properties. After inspecting the properties, Wise chose the one at issue and informed defendant of his choice. The following day, defendant showed up at the bank with a deed to the property. Wise withdrew $1,000 from his account and gave it to defendant in exchange for the deed. Wise testified that he believed the deed was genuine, although he was surprised that defendant gave him the deed so quickly, and it already had the recording stamp on it when defendant brought it to Wise.

In contrast, defendant testified that he obtained the list of properties from another man, Jesse Spencer, with the understanding that the list represented properties available from the county. Defendant was considering buying properties from the list, and shared the list with Wise because Wise mentioned wanting to buy properties. Defendant testified that he picked Wise up from the bank after it closed and drove him to meet Spencer at a "cash advance place," where Wise paid Spencer for the property, and Spencer gave Wise the deed. Defendant denied receiving any money from Wise or from Spencer. During rebuttal, Wise categorically denied defendant's version of the transaction. In addition, when investigating officer Detective Mary Williams-Jones of the Mortgage and Deed Fraud Unit contacted defendant during her investigation, defendant denied knowing Wise, refused to go to the police station for an interview, refused to provide a written statement, and never mentioned Jesse Spencer or any third parties being involved in any transaction.

The trial court credited Wise's version of events and found that defendant knew the deed was falsified and that he intended to defraud Wise.[1] The court sentenced defendant after calculating the minimum sentence guidelines and assessing 10 points for prior record variable (PRV) 5 and 10 points for PRV 6. Defendant appealed and moved under MCR 7.211(C)(1) for this Court to remand for resentencing and a *Ginther*[2] hearing on his ineffective assistance of counsel claim. This Court denied the motion without prejudice.[3] Defendant renews his request for remand in his brief on appeal.[4]

---

[1] The trial court concluded that even if Spencer had been involved in the transaction, defendant "understood what was going on and that this was a false deed." However, concluding there was no evidence as to who actually created the false 2016 deed, the trial court acquitted defendant of a charge of forgery of a document affecting real property, MCL 750.248b.

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] *People v Pore*, unpublished order of the Court of Appeals, entered October 1, 2020 (Docket No. 351093).

[4] The trial court acquitted defendant of a charge of forgery of a document affecting real property, MCL 750.248b.

## II. DISCUSSION

## A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that his trial counsel rendered constitutionally ineffective assistance by failing to investigate for and call witnesses who could have provided support for defendant's version of events. As an offer of proof, defendant attached three affidavits from potential witnesses to his motion to remand and his brief on appeal. We are unpersuaded.

"Whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review the trial court's factual findings for clear error and its constitutional determinations de novo. *Id.* "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Anderson*, 284 Mich App 11, 13; 772 NW2d 792 (2009) (quotation marks and citation omitted). Defendant preserved this issue by filing a motion to remand to the trial court for an evidentiary hearing to expand the record. However, because we denied the motion, and we decline to grant defendant's renewed motion for the reasons explained in this opinion, our review is limited to "errors apparent on the record." *People v. Abcumby-Blair*, ___ Mich App ___, ___: ___ NW2d ___ (2020) (Docket No. 347369); slip op at 6.

Effective assistance of counsel is presumed and defendant bears a heavy burden to prove otherwise. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). To establish ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. See *Smith v Spisak*, 558 US 139, 149; 130 S Ct 676; 175 L Ed 2d 595 (2010); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). The decision whether to call or question witnesses is presumed to be a matter of trial strategy. *People v Russell*, 297 Mich App 707, 716, 76; 825 NW2d 623 (2012).

In support of his claim, defendant attached affidavits executed by James Hill, Theidore Easter, and Phillip Asare. Hill averred that he met defendant in 2014 or 2015, and advised him at some point not to spend time with Spencer because of the latter's reputation. Hill's affidavit recounts that Spencer provided defendant with houses in exchange for painting work, defendant would work on them and put money into them, believing that he owned them, and then he would lose them. Hill stated that defendant confronted Spencer, but Spencer would not give him his money back, and that "Spencer used [defendant] as his guinea pig and was able to manipulate him into believing the real estate transactions were legitimate." Easter's affidavit describes how he purchased a house in early 2017 under circumstances similar to those described by defendant at trial. Defendant was the go-between for his purchase of some property from a man whose name he could not remember. Easter averred that he could tell defendant "did not know a lot about real estate and did not understand the process." Easter later learned that someone else owned the property. When he complained to defendant, defendant reimbursed him, even though it was not defendant from whom Easter had purchased the property. Easter averred that he still trusts defendant. Asare's affidavit states that defendant is hard-working and of very good character. All three affiants state they were never contacted by trial counsel.

We are not persuaded that these affidavits "set forth any additional facts that would require development of a record to determine if defense counsel was ineffective." *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007). Nor are we persuaded that trial counsel rendered ineffective assistance by not calling the affiants as witnesses. Easter and Asare attested to defendant's good character; but Wise also said that defendant was well-liked at the bank and that he thought him a "stand up guy." Easter also stated that defendant did not seem to know much about real estate; but the trial court witnessed first-hand defendant's unfamiliarity with terms such as "grantor" and "grantee" and his apparent inability to read a deed and could reach its own conclusion regarding whether defendant possessed the requisite knowledge for the charged crimes. In addition, none of the affiants claim to have personal knowledge of the transaction at issue. It appears that a goal of the affidavits is to suggest that, since defendant was also a victim of Spencer's, it was unlikely that he possessed the knowledge and intent required to sustain his convictions.

The suggestion that defendant was an unknowing dupe of Spencer's has some surface appeal. It is curious, though, that defendant should now suggest that he was a victim of Spencer's when, at trial, defendant seemed keen on excluding testimony about the purchase of any properties other than the subject property at issue, arguing when the issue arose that the prosecution was attempting to introduce MRE 404(b) evidence without having provided the proper notification. Hill's affidavit expressly links defendant with Spencer, but seems of little help overall to defendant. That defendant apparently ignored Hill's advice not to spend time with Spencer because of his reputation might reasonably be expected to reflect unfavorably on defendant. Further, Hill does not claim to have personal knowledge of the relationship between defendant and Spencer, of any transactions between them, or of the houses defendant allegedly obtained from Spencer, the work he put into them, or the circumstances under which defendant lost them. Without personal knowledge, Hill would not be able to testify about any of these circumstances. See MRE 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter"). In addition, Hill's claim that defendant confronted Spencer and that Spencer used him as a guinea pig has the ring of inadmissible hearsay. See MRE 801, 802. As to Easter's attestation that defendant acted as a go-between for Easter's purchase of property from a man whose name Easter could not remember, and then reimbursed him when he lost the property to the true owner, a fact-finder might reasonably infer from this statement that defendant was more than a simple intermediary.

Although a close call, we cannot say that these affidavits compel us to remand this matter for an evidentiary hearing to develop the record to help us to determine whether trial counsel rendered ineffective assistance. See *Williams*, 275 Mich App at 200. Assuming for the sake of argument that trial counsel did render deficient performance by not calling Hill, Easter, and Asare as witnesses, we detect no prejudice. Hill's affidavit was largely hearsay, Easter's is potentially as unfavorable to defendant as it is favorable and, as indicated, defendant's testimony provided the trial court an opportunity to assess for itself what defendant knew about deeds. And although Easter's and Asare's potential character testimony might have been favorable to defendant's credibility, in light of other testimony adduced at trial, we cannot say that, but for trial counsel's failure to elicit this testimony, there is a reasonable probability of a different outcome. See *Trakhtenberg*, 493 Mich at 51. Accordingly, defendant's claim of ineffective assistance of counsel fails.

-4-

## B. SENTENCING

Defendant next argues that he is entitled to resentencing because of the trial court's errors in calculating his minimum sentence guideline. The prosecution agrees with defendant's position, as do we.

We review the "interpretation and application of the statutory sentencing guidelines" de novo. *People v Francisco*, 474 Mich 82, 85; 711 NW2d 44 (2006). We review for clear error the trial court's factual findings, which "must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

As part of calculating a minimum sentence guideline range, PRVs 5 and 6 are scored on the basis of a defendant's prior qualifying misdemeanors and relationship to the criminal justice system *at the time of the sentencing offense*. MCL 777.55(3)(a) (PRV 5); *People v Johnson*, 293 Mich App 79, 85; 808 NW2d 815 (2011) (PRV 6). The record shows, and the parties agree, that at the time of the sentencing offense, defendant had only one qualifying prior misdemeanor under PRV 5, and no relationship to the criminal justice system. The trial court made no contrary fact findings. Therefore, PRV 5 should have been scored at 2 points instead of 10 points, and PRV 6 should have been scored at 0 points instead of 10 points. MCL 777.55(1)(e); MCL 777.56(1)(e). Deducting 18 points from defendant's PRV total score of 85 points reduces it to 67 points, changing his PRV level from F to E and his minimum sentence guideline range for the uttering and publishing conviction from 29 to 71 months to 19 to 47 months in prison.

Because the corrections to PRVs 5 and 6 reduce defendant's minimum sentence guidelines range, he is entitled to resentencing. *People v Carter*, 503 Mich 221, 230; 931 NW2d 566 (2019) (remanding for resentencing when correction to offense variable resulted in change to guidelines range, although sentence was within the corrected guidelines range).

We affirm defendant's convictions, but remand for resentencing. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Karen M. Fort Hood
/s/ Michael J. Riordan