*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

NICHOLAS VINCENT MEUHLEN,

Defendant-Appellant.

UNPUBLISHED
February 15, 2024

No. 366252
Tuscola Circuit Court
LC No. 2018-014630-FH

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

NICHOLAS VINCENT MEUHLEN,

Defendant-Appellant.

No. 366256
Tuscola Circuit Court
LC No. 2018-014631-FH

Before: GADOLA, C.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

In Docket No. 366252, defendant appeals by leave granted the trial court's order discharging him from probation in trial court Docket No. 2018-14630-FH. In Docket No. 366256, defendant appeals by leave granted from the same order of the trial court discharging him from probation in trial court Docket No. 2018-14631-FH. We affirm the trial court's order, but without prejudice to defendant's raising his challenge under the Holmes Youthful Trainee Act (HYTA), MCL 762.11 *et seq.*, in future proceedings.

## I. FACTS

On December 23, 2017, defendant's mother discovered him unconscious at his home. Defendant had been diagnosed with depression, anxiety, and bipolar disorder, had a history of alcohol and drug use, and previously had been hospitalized with suicidal tendencies. When his

-1-

mother attempted to take him to the hospital, he resisted her help, and she saw that he had a pistol in his possession. She called 911. When defendant then became combative with emergency medical personnel, police were called to the scene. After receiving permission to search the home from defendant's mother, who owned the home, the officers found a large quantity of marijuana, methamphetamine, and hydrocodone in the home, as well as drug paraphernalia and the unregistered pistol. Defendant was charged with possession of methamphetamine, MCL 333.7403(2)(b)(*i*), possession of hydrocodone, MCL 333.7403(2)(b)(*ii*), two counts of possession of a firearm during the commission of a felony, MCL 750.227b, possession of marijuana, MCL 333.7403(2)(d), and purchasing and possessing a pistol without a license, MCL 28.422, MCL 750.232a(1).

On the night of April 15, 2018, defendant called the Tuscola County Sheriff's Office and reported that two armed men were inside his home. Tuscola County deputies responded and found defendant and his friend, RR, outside the home with a baseball bat. Defendant and RR told the police that they had been inside the home when defendant heard people talking outside, and that one man had attempted to open the front door. Defendant then saw a man in his bedroom, and responded by firing a shotgun toward his bedroom door. Defendant and RR told the officers that they believed one of the armed men was under the mobile home.

The officers searched the premises and did not find anyone, nor any sign in the snow that anyone other than defendant had walked near the home. In the home, the officers found drug paraphernalia, a syringe containing a liquid that later was identified as cocaine, a folded paper with a substance that later was identified as containing tetrahydrocannabinol, a component of marijuana, and a loaded shotgun that had recently been discharged in the home, damaging an interior door. The officers observed that both defendant and RR appeared to be under the influence of substances; defendant was extremely jittery and it was difficult for him to stay on topic. Defendant then told the officers that his brain must have played a trick on him, perhaps because he was too high, and that actually no intruder had been in the home.

Defendant was arrested and charged with two counts of filing a false police report, MCL 750.411a(1)(b), reckless discharge of a firearm, MCL 750.234b, and three counts of possession of a firearm during the commission of a felony, MCL 750.227b (Docket No. 2018-014631-FH). The next day, as officers were processing defendant after his arraignment, they discovered that defendant had in his possession two counterfeit Michigan driver's licenses, which resulted in defendant being charged with possession of forged operator's licenses, MCL 257.310(9) (Docket No. 2018-014629-FH).

At the time he was charged, defendant was 20 years old. Defendant had graduated from high school and was attending the University of Michigan on a full academic scholarship. According to his mother, when he was being treated with medication for his mental health, defendant was cooperative, but at the time of his arrest he was not receiving mental health treatment. Defendant denied his drug abuse.

The parties entered into a *Cobbs*[1] agreement. In Docket No. 2018-14631-FH, defendant pleaded guilty to discharge of a firearm in a building, MCL 750.234b(2), and making a false report to the Tuscola Sheriff's Office, MCL 750.411a(1)(b); the remaining four charges in that case were dismissed. In Docket No. 2018-14630-FH, defendant pleaded guilty to possession of methamphetamine and possession of analogs (hydrocodone), and the remaining charges in that case were dismissed. Defendant also pleaded guilty to possession of forged operator's licenses, MCL 257.310(9) in Docket No. 2018-14629-FH.[2]

Judgment was deferred under the HYTA. Defendant was assigned youthful trainee status under the act, was committed to the county jail for 180 days beginning February 15, 2019, with credit for 37 days served, and was placed on probation for not more than 3 years. The trial court entered an Assignment to Youthful Trainee Status and an Order of Probation. Conditions of his probation included not using alcohol or drugs, submitting to drug and alcohol testing, completing substance abuse treatment, attending AA/NA/CA meetings, taking prescribed medication, completing a psychological evaluation, completing any recommended mental health treatment, obeying all court orders, not possessing any controlled substance, not being assaultive, abusive, threatening, or intimidating, and not using any object as a weapon.

Thereafter, defendant repeatedly violated his probation. Defendant was charged with violating his probation on or about October 1, 2019, by possessing hydromorphone without a prescription and by engaging in a verbal altercation with his mother, which led to the police being called to the mother's residence. Defendant pleaded guilty to violating his probation.

On or about December 24, 2019, defendant overdosed on fentanyl. On February 1, 2020, defendant violated the electronic tether restrictions of his probation. Defendant also was charged with violating his probation on or about May 29, 2020, by possessing an AK-47 and hundreds of rounds of ammunition, and threatening to kill his ex-girlfriend. Defendant pleaded guilty to violating his probation by violating the restrictions of his electronic tether. On August 23, 2021, defendant tested positive for fentanyl.

On October 23, 2021, defendant was arrested for OWI after striking another vehicle and leaving the scene of the accident. Police found $1,005 on defendant's person and a half-empty fifth bottle of vodka on the passenger seat of defendant's car. In the center console of the car was a small Ziploc bag with pills and a drawstring pouch containing unused Ziploc bags. In a fire-safe box in the trunk of the car was an envelope with 7 plastic bags and 8 folded papers containing a substance, as well as two large Ziploc bags containing what appeared to officers to be psilocybin mushrooms, 100 empty gelatin capsules, a digital scale, two 100-count boxes of syringes,

---

[1] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

[2] On December 8, 2020, defendant was discharged from probation in Docket No. 2018-14629-FH because the charge of possession of counterfeit operator's licenses, MCL 257.310(9), falls within the motor vehicle code, and therefore defendant was not eligible for HYTA status under MCL 762.11(3)(a) for that charge. The trial court entered a conviction for that charge and sentenced defendant to his time served in jail.

numerous foil wrapped tablets that appeared to police to be acid, 58 marijuana cigarettes, and numerous other packets containing suspected illegal drugs. Defendant pleaded guilty to a probation violation in each of his HYTA cases. The trial court thereafter dismissed the probation violation petitions after the prosecutor failed to provide a writ to enable defendant, who was then incarcerated, to attend the sentencing hearing.

On August 3, 2022, the trial court extended defendant's probation until October 31, 2022. On November 22, 2022, the probation officer filed a motion seeking defendant's discharge from probation and seeking revocation of his HYTA status. The motion asserted that defendant had repeatedly violated his probation and in August 2022, defendant had been sentenced to 3 years, 4 months to 10 years' imprisonment in Genesee County arising from his October 23, 2021 arrest. On November 23, 2022, the trial court entered an order discharging defendant from probation for failing to comply with the conditions of probation.

Defendant applied for leave to appeal the trial court's order in Docket Nos. 2018-14630-FH and 2018-14631-FH. This Court granted defendant's application for leave to appeal in each case,[3] and thereafter consolidated the appeals.[4]

## II. DISCUSSION

### A. HYTA

Defendant contends that the trial court erred by revoking his HYTA status in its November 23, 2022 order, which was issued after the expiration of defendant's three-year probation. Defendant argues that because his HYTA status remained in effect at the time his three-year probationary period expired, the trial court could not thereafter revoke his HYTA status because the end of his probation was a "final discharge" under the HYTA. Defendant further argues that although the trial court purported to extend defendant's probation beyond the February 15, 2022 expiration date, the trial court was precluded by statute from doing so. We conclude that the trial court did not revoke defendant's HYTA status in its November 23, 2022 order; as a result, whether the trial court had authority under the HYTA to do so is not ripe for review by this Court.

We note initially that defendant did not raise this issue before the trial court, and the issue therefore is unpreserved. See *Wells v State Farm Fire & Cas Co*, 509 Mich 855 (2022). We review an unpreserved assertion of error for plain error affecting the defendant's substantial rights, *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999), which occurs when the lower court proceedings were affected by the error, *People v Burger*, 331 Mich App 504, 516; 953 NW2d 424 (2020). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial

---

[3] *People v Meuhlen*, unpublished order of the Court of Appeals, issued June 28, 2023 (Docket No. 366252); *People v Meuhlen*, unpublished order of the Court of Appeals, issued June 28, 2023 (Docket No. 366256).

[4] *People v Meuhlen*, unpublished order of the Court of Appeals, issued July 5, 2023 (Docket Nos. 366252, 366256).

proceedings." *Id*. (quotation marks and citation omitted). This Court reviews de novo questions of statutory interpretation. *People v Carter*, 503 Mich 221, 226; 931 NW2d 566 (2019).

The HYTA is a juvenile diversion program for criminal defendants under age 24. See *People v GR*, 331 Mich App 58, 62; 951 NW2d 76 (2020) (referencing an earlier version of the HYTA). If a defendant is assigned youthful trainee status under the HYTA and successfully completes the requirements imposed by the trial court, the trial court is required to discharge the defendant from HYTA status and dismiss the criminal proceedings. In that circumstance, the defendant is not considered convicted of the crime, and the record is closed to public inspection. *Id*.

At the time defendant was assigned status as a youthful trainee under the HYTA, the act provided, in relevant part:

> (1) Until October 1, 2021 and except as provided in subsections (3) and (4), if an individual pleads guilty to a criminal offense, committed on or after the individual's seventeenth birthday but before his or her twenty-fourth birthday, the court of record having jurisdiction of the criminal offense may, without entering a judgment of conviction and with the consent of that individual, consider and assign that individual to the status of youthful trainee. . . . [MCL 762.11(1).]

The HYTA limits the term of probation for a defendant assigned HYTA status to not more than three years:

> (1) If an individual is assigned to the status of a youthful trainee and the underlying charge is an offense punishable by imprisonment for a term of more than 1 year, the court shall do 1 of the following:
>
> * * *
>
> (b) Place the individual on probation for not more than 3 years subject to probation conditions as provided in section 3 of chapter XI [MCL 771.3]. . . . [MCL 762.13(1).]

MCL 762.14 provides for the discharge and dismissal of HYTA status as follows:

> (1) If consideration of an individual as a youthful trainee is not terminated and the status of youthful trainee is not revoked as provided in section 12 of this chapter [MCL 762.12], upon final release of the individual from the status as youthful trainee, the court shall discharge the individual and dismiss the proceedings.

The HYTA also authorizes a trial court to revoke a defendant's youthful trainee status at any time before the defendant's final release. MCL 762.12 provides, in relevant part:

> (1) Subject to subsection (2), the court of record having jurisdiction over the criminal offense referred to in section 11 of this chapter [MCL 762.11], may at any time, terminate its consideration of the individual as a youthful trainee or, once

having assigned the individual to the status of a youthful trainee, may at its discretion revoke that status at any time before the individual's final release.

In this case, defendant contends that the trial court did not have authority to revoke his HYTA status after his three-year probation period ended on February 15, 2022. Defendant argues that MCL 762.12 authorizes the trial court to revoke HYTA status only "before the individual's final release," which defendant argues occurred before the trial court entered its November 23, 2022 order. The record, however, does not indicate that the trial court revoked defendant's HYTA status. As noted, in 2019 the trial court assigned defendant HYTA status. On February 20, 2019, the trial court entered an order entitled "Assignment to Youthful Trainee Status" that stated that defendant "is assigned to youthful trainee status and is: placed on probation for not more than 3 years . . . and shall abide by the terms of the attached probation order." The trial court thereafter entered an "Order of Probation," dated February 22, 2019, that set forth the terms of the probation and also stated that "Judgment of guilt is deferred under: MCL 762.14, Youthful Trainee Status."

On November 22, 2022, defendant's probation officer moved for defendant's discharge from probation because defendant had violated his probation; the motion for discharge specifically requested that the trial court revoke defendant's HYTA status. The trial court thereafter revoked defendant's probation, but did not revoke defendant's HYTA status. The trial court's November 23, 2022 Order for Discharge from Probation states, in relevant part:

1. THE COURT FINDS that all conditions of probation were not successfully completed. The defendant was ordered to: c. Mental health treatment court and did not successfully complete the program.

* * *

3. The defendant is discharged from probation supervision. Any unfulfilled obligations or conditions of the sentence imposed by this court can be pursued according to law.

The Order for Discharge from Probation does not state that defendant's HYTA status is revoked, nor does it otherwise reference his HYTA status. In his brief on appeal, defendant acknowledges that the Order for Discharge did not revoke his HYTA status. Defendant nonetheless argues that his HYTA status should be reinstated because the trial court had no authority to revoke his HYTA status after his "final release," which defendant argues occurred automatically when his probation ended. We conclude, however, that because the trial court has not revoked defendant's HYTA status, whether the trial court is precluded from revoking defendant's HYTA status is not ripe for review by this Court.

The ripeness doctrine precludes the adjudication of a claim that is merely hypothetical and from issuing an advisory opinion. *People v Robar*, 321 Mich App 106, 128; 910 NW2d 328 (2017). It is possible for this Court to reach an issue as "justiciably ripe" if the Court determines that "the harm asserted has matured sufficiently to warrant judicial intervention." *Id*. "Inherent in this assessment is the balancing of any uncertainty as to whether [a party] will actually suffer future injury, with the potential hardship of denying anticipatory relief." *Id*. (quotation marks and citation omitted). In this case, defendant urges this Court to determine that the trial court could not revoke

his HYTA status on November 23, 2022, and cannot now or in the future revoke his HYTA status. Defendant did not raise this issue before the trial court, the trial court has not revoked his HYTA status, and defendant has not explained why it is necessary for this Court to determine this issue before the trial court has the opportunity to address it. We therefore conclude that defendant's challenge on this issue is not ripe for appellate review.

We do not, however, preclude defendant from raising this challenge in future proceedings. Defendant raises a potentially meritorious argument that the trial court was not authorized by the HYTA to impose probation with a greater term than three years, see MCL 762.13(1), and also that once defendant's probationary period ended, the trial court did not have "the authority to extend a probation period that is already over." See *People v Vanderpool*, 505 Mich 391, 404; 952 NW2d 414 (2020), referencing MCL 771.2 through MCL 771.5.

## B. MCL 769.1k(1)(b)(*iii*)

The trial court's order of probation required defendant to pay certain court costs. Defendant contends that MCL 769.1k(1)(b)(*iii*) is unconstitutional because it allows trial courts to impose upon criminal defendants costs incurred by the trial court, thereby financially incentivizing the trial court to convict defendants and impose costs to fund the trial courts. Defendant also contends that the statute undermines the due process right to appear before and be sentenced by a neutral judge, and violates separation of powers by preventing trial judges from performing their duties. In doing so, defendant raises a facial challenge to the constitutionality of the statute.

This Court previously rejected the same facial challenge to the constitutionality of MCL 769.1k(1)(b)(*iii*) in *People v Johnson*, 336 Mich App 688; 971 NW2d 692 (2021), rejecting the same challenges regarding due process and separation of powers raised by defendant in this case, and also rejecting the argument now raised by defendant that the statute interferes with the impartiality of the judiciary. Although our Supreme Court granted leave to appeal this Court's decision in *Johnson* and ordered the parties to address the issues of due process and separation of powers, *People v Johnson*, 509 Mich 1094 (2022), the Supreme Court thereafter vacated its order and denied leave to appeal on the basis that it was "no longer persuaded that the questions presented should be reviewed by this Court." *People Johnson*, 511 Mich 1047 (2023). As a result, this Court's decision in *Johnson* is controlling on this issue. See MCR 7.215(C)(2) and (J)(1). Defendant's constitutional challenge to MCL 769.1k(1)(b)(*iii*) therefore is without merit.

Affirmed.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra

-7-