*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

HAZEL JANAE COOPER,

        Defendant-Appellant.

UNPUBLISHED
May 08, 2025
2:01 PM

No. 365423
Saginaw Circuit Court
LC No. 18-045061-FC

Before: GADOLA, C.J., and K. F. KELLY and REDFORD, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted[1] the trial court's order denying defendant's motion for relief from judgment with respect to her sentence of 20 to 40 years' imprisonment, which was the result of her guilty-plea convictions of second-degree murder and possession of a firearm during the commission of a felony ("felony-firearm"). Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises from the shooting death of the victim, Anthony Cannon, who was in a romantic relationship with defendant at the time of his death. On March 5, 2018, the victim's mother called the police concerned that her son may have been shot by defendant. When officers arrived, the victim's body was found in a trashcan and it was apparent to officers that defendant had attempted to clean up the crime scene. A subsequent autopsy revealed that the victim was shot twice in the back of the head, and investigators determined he was lying face down in bed when he was shot.

In an agreement with prosecutors, defendant pleaded guilty to second-degree murder, MCL 750.317; and felony-firearm, MCL 750.227b; in exchange for dismissal of the open murder count

---

[1] *People v Cooper*, unpublished order of the Court of Appeals, entered September 18, 2023 (Docket No. 365423).

initially charged. Defendant was sentenced to two years' imprisonment for the felony-firearm conviction, to be served prior and consecutive to her sentence of 20 to 40 years' imprisonment for her second-degree murder conviction.

Three years later in 2022, defendant moved for relief from judgment from her sentence, contending that the scoring of offense variable ("OV") 6 and 10 was erroneous,[2] and that her trial counsel rendered ineffective assistance of counsel for failing to object during sentencing. The court denied the motion, concluding first that the killing did not arise from a "combative situation" or from "any contemporaneous threat of victimization" such that only a 10-point score was warranted under OV 6. The trial court also rejected defendant's contention that 10 points should not have been assessed under OV 10, noting that the victim was in a vulnerable position when he was shot in the back of the head while sharing a bed with defendant. After this Court granted defendant's delayed application for leave, this appeal followed.

II. STANDARDS OF REVIEW

A trial court's factual determinations at sentencing need only be supported by a preponderance of the evidence and are reviewed by this Court for clear error. *People v Carter*, 503 Mich 221, 226; 931 NW2d 566 (2019). Whether the facts, as found, warrant assessment of points under the pertinent offense variables is a question of statutory interpretation that is reviewed de novo. *Id*. "The trial court's findings are clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016).

Issues of statutory interpretation are reviewed de novo. *Carter*, 503 Mich at 226. "When interpreting a statute, this Court's primary goal is to ascertain the legislative intent that may reasonably be inferred from the words in the statute." *People v Shami*, 501 Mich 243, 253; 912 NW2d 526 (2018) (quotation marks, citations, and brackets omitted). "Because the language of a statute provides the most reliable manifestation of the Legislature's intent, this Court begins its interpretation by reviewing the words and phrases of the statute itself." *Id*. If the word or phrase at issue "is not defined in the statute, it must be accorded its plain and ordinary meaning, unless the undefined word or phrase is a legal term of art. This Court has consistently consulted dictionary definitions to give words and phrases their plain and ordinary meaning." *Id*.

Lastly, "[w]hether a defendant has received ineffective assistance of counsel is a mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). The trial court's factual findings are reviewed for clear error, and questions of constitutional law are reviewed de novo. *Id*.

III. ANALYSIS

A. OV 6

---

[2] OV 6 concerns the "offender's intent to kill or injure another individual," MCL 777.36(1); while OV 10 addresses the "exploitation of a vulnerable victim." MCL 777.40(1).

Defendant first argues that the trial court clearly erred when it found that the circumstances of the offense did not indicate a combative situation or response to victimization of the offender by the decedent, such that only a 10-point score for OV 6 was required under MCL 777.36(2)(b). We disagree.

While a court must score and consider the sentencing guidelines, the guidelines are advisory only. See *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015). "In scoring OVs, a court may consider all record evidence, including the contents of a PSIR, plea admissions, and testimony presented at a preliminary examination." *People v Horton*, 345 Mich App 612, 616; 8 NW3d 622 (2023). "The trial court may rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable." *Id*. (quotation marks and citation omitted).

The scoring of OV 6 is governed by MCL 777.36, which states:

(1) Offense variable 6 is the offender's intent to kill or injure another individual. Score offense variable 6 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) The offender had premeditated intent to kill or the killing was committed while committing or attempting to commit arson, criminal sexual conduct in the first or third degree, child abuse in the first degree, a major controlled substance offense, robbery, breaking and entering of a dwelling, home invasion in the first or second degree, larceny of any kind, extortion, or kidnapping or the killing was the murder of a peace officer or a corrections officer ……………………… 50 points

(b) The offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result ……………………. 25 points

(c) The offender had intent to injure or the killing was committed in an extreme emotional state caused by an adequate provocation and before a reasonable amount of time elapsed for the offender to calm or there was gross negligence amounting to an unreasonable disregard for life …………………………. 10 points

(d) The offender had no intent to kill or injure …………………….. 0 points

(2) All of the following apply to scoring offense variable 6.

(a) The sentencing judge shall score this variable consistent with a jury verdict unless the judge has information that was not presented to the jury.

(b) Score 10 points if a killing is intentional within the definition of second degree murder or voluntary manslaughter, but the death occurred in a combative situation or in response to victimization of the offender by the decedent.

The prosecution contends that this Court should affirm defendant's sentence because her no-contest plea to second-degree murder established the requisite intent to assess 25 points under

OV 6. See MCL 777.36(1)(b). In *People v Belkin*, unpublished per curiam opinion of the Court of Appeals, issued February 28, 2019 (Docket No. 341915), pp 3-4,[3] the defendant had a blood-alcohol content of 0.315 and was traveling at 134 miles per hour when he crashed his vehicle into the victim's vehicle, killing her. *Id*. at 1. On appeal, we upheld the trial court's 25-point score assessed for OV 6 under MCL 777.36(1)(b), which requires that the "offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result." We noted that "[a] conviction for second-degree murder requires the prosecution to prove (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse"; further, "[m]alice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Belkin*, unpub op at 3 (quotation marks, citations, and emphasis omitted). The defendant's plea of *nolo contendere* to second-degree murder in *Belkin* established

> that he had the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of that behavior was to cause death or great bodily harm. This element is synonymous with the requirement under OV 6—namely, that defendant created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result. Therefore, the trial court did not err in scoring OV 6 at 25 points. [*Id*. at 3-4 (quotation marks and citation omitted).]

A no-contest plea is considered "an admission of all the essential elements of a charged offense and, thus, is tantamount to an admission of guilt for the purposes of the criminal case." *People v Franklin*, 298 Mich App 539, 544; 828 NW2d 61 (2012) (quotation marks and citation omitted). An element of second-degree murder is malice. *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). The plain language of MCL 777.36(1)(b) is effectively synonymous with the definition of malice, see *Belkin*, unpub op at 3-4, and MCL 777.36(2)(a) requires the court to score OV 6 "consistent with a jury verdict unless the judge has information that was not presented to the jury." See *People v Dixon-Bey*, 321 Mich App 490, 528; 909 NW2d 458 (2017) ("Accordingly, because defendant was convicted of second-degree murder in this case, the trial court was constrained by MCL 777.36(2)(a) from scoring OV 6 to reflect a premeditated intent absent information that was not presented to the jury.") (quotation marks omitted). The establishment of "malice" under MCL 777.36(1)(b) operates as a threshold determination that requires the trial court to inquire—in appropriate cases—into whether the death nevertheless also "occurred in a combative situation or in response to victimization of the offender by the decedent." MCL 777.36(2)(b).

There are no published decisions directly interpreting MCL 777.36(2)(b). However, in *People v Rodriguez*, 212 Mich App 351, 353-354; 538 NW2d 42 (1995), this Court interpreted the term "combative situation" as used in OV 3 ("Intent to Kill or Injure") of the then-applicable judicial sentencing guidelines. See *People v McGraw*, 484 Mich 120, 124; 771 NW2d 655 (holding that courts must interpret provisions of the sentencing guidelines "in the context of the

---

[3] Unpublished decisions are not binding but may be considered for their persuasiveness. *People v Brcic*, 342 Mich App 271, 279 n 2; 994 NW2d 812 (2022).

entire statute so as to produce, if possible, a harmonious and consistent enactment as a whole") (quotation marks and citation omitted); *People v Anderson*, 330 Mich App 189, 197; 946 NW2d 825 (2019) ("Statutes that address the same subject or share a common purpose are *in pari materia* and must be read together as a whole") (quotation marks and citation omitted). In *Rodriguez*, the defendant pleaded no contest to second-degree murder and argued on appeal that the killing occurred as the result of a combative situation within the meaning of OV 3 of the judicial sentencing guidelines. *Id*. at 352-353. Noting that "[w]hether lawful defense of oneself or others constitutes a 'combative situation' under OV 3 is an issue of first impression," this Court adopted a definition of "combative" as " 'ready or inclined to fight; pugnacious.' " *Id*., quoting *Random House Webster's College Dictionary* (1992).

Similarly, while the term "victimization" has not been interpreted in the context of OV 6, the Michigan Supreme Court has defined the term in the context of OV 10. See *People v Cannon*, 481 Mich 152, 161; 749 NW2d 257 (2008). OV 10 is governed by MCL 777.40, which provides for an assessment of 15 points when the offense involved "predatory conduct." MCL 777.40(1)(a). The statute defines "predatory conduct," in relevant part, as "preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). As with OV 6, the term "victimization" is not defined by MCL 777.40. In *Cannon*, the Supreme Court defined " 'victimize' " as " 'to make a victim of' " and defined " 'victim' " as either " 'a person who suffers from a destructive or injurious action or agency' " or " 'a person who is deceived or cheated.' " *Id*., quoting *Random House Webster's College Dictionary* (2001).

The trial court did not clearly err when it found by a preponderance of the evidence that the victim's death did not "occur[] in a combative situation or in response to victimization of the offender by the decedent." See MCL 777.36(2)(b). The trial court found that the killing did not arise out of a combative situation because defendant killed the victim with two "tightly clustered shots" in the back of the head, which could not have occurred if the victim had actively been turning toward defendant at the time.

Defendant contends on appeal that her lack of defensive wounds was not relevant; instead she contends that she shot the victim because she thought he was about to shoot her, and the trial court erred by assuming defendant's account of the incident was false because of the location of the gunshot wounds. We disagree; whether defendant had any defensive wounds was relevant to whether the situation was combative. Moreover, even if it were not relevant, the trial court's factual finding that the victim was not actively turning toward defendant with a gun in his hand was not clearly erroneous. The trial court did not rely on the presence or lack of defensive wounds on defendant; rather, the court's conclusion that the victim was not ready or inclined to fight necessarily follows from the trial court's factual finding that the victim had his head on the pillow, turned away from defendant and was not "ready or inclined to fight." See *Rodriguez*, 212 Mich App at 353 (quotation marks and citation omitted). Thus, the trial court did not clearly err in finding there was no "combative situation" such that only 10 points should have been assessed.

Whether the killing was in response to the "victimization" of the defendant is a closer question. The trial court found that "[t]he record did contain some evidence . . . to indicate that the couple had a tumultuous/abusive relationship" that involved a history of arguments and physical violence that included "at least one incident in which Defendant was hitting [the victim]" and another in which defendant threatened the victim with a gun. The trial court also found that

there was no evidence of injuries on defendant's body on the day of the killing and that the physical evidence "rebuts any contention that [the victim] was moving toward Defendant at the time of the shooting." Therefore, the trial court found that the shooting "was not in response to any contemporaneous threat of victimization." Defendant contends, however, that the trial court erred because there was sufficient evidence that defendant was a victim of physical, emotional, and sexual abuse "throughout her relationship" with the victim, including the morning of the incident when the victim "had slapped her, choked her, and raped her."

Although there was evidence that defendant had been victimized by the victim, we are not definitely and firmly convinced that the trial court's finding that the shooting "was not in response to any contemporaneous threat of victimization" was clearly erroneous. See *Shaw*, 315 Mich App at 672. Analogizing from the Michigan Supreme Court's definition of "victimization" for OV 10, MCL 777.36(2)(b) applies if the defendant acted in response to having suffered from a destructive or injurious action of the decedent. See *Cannon*, 481 Mich at 161. In this case, there is evidence of physical violence by both the victim and defendant against each other, but none contemporaneous with the shooting. Indeed, the trial court found that the relationship was abusive, but not that defendant was the victim of an abusive relationship. The trial court's finding that the victim was not turning toward defendant when he was shot supports the conclusion that defendant had an opportunity to retreat but instead had reengaged with violence, causing the victim's death. Accordingly, the trial court did not err when it did not assess only 10 points for OV 6 under MCL 777.36(2)(b).

### B. OV 10

Next, defendant argues that the trial court clearly erred when it concluded that the victim qualified as a "vulnerable victim" under MCL 777.40. According to defendant, there was no evidence to support this determination beyond the fact that defendant and the victim lived together, such that defendant had exploited their relationship to commit the instant offense. We disagree.

The scoring of OV 10 addresses the "exploitation of a vulnerable victim" and is governed by 777.40. A score of 10 points is required when the defendant had "exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or . . . abused his or her authority status." MCL 777.40(1)(b). " 'Exploit' means to manipulate a victim for selfish or unethical purposes." MCL 777.40(3)(b). " 'Vulnerability' means the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c). This "susceptibility" need not be inherent in the victim; rather, "the statutory language allows for susceptibility arising from external circumstances as well." *People v Huston*, 489 Mich 451, 466; 802 NW2d 261 (2011). This Court has defined "domestic relationship" as a "familial or cohabiting relationship." *People v Jamison*, 292 Mich App 440, 447; 807 NW2d 427 (2011). The focus of OV 10 is on the victim's vulnerability, *Cannon*, 481 Mich at 157-158, but the mere existence of a factor listed in the statute "does not automatically equate with victim vulnerability." MCL 777.40(2).

The trial court found that the victim and defendant were cohabitating and that there was "substantial physical evidence that the shooting occurred when [the victim] was in bed with the Defendant, with his head away from her." The trial court also found that defendant had access to the victim while he was isolated and unguarded by virtue of their domestic relationship, which

defendant exploited when she shot him in the back of the head. The trial court's findings are supported by the evidence. Defendant was able to take advantage of her domestic relationship with the victim, with whom she lived, in order to kill him when he was asleep and most vulnerable.

Defendant argues that the victim was not "vulnerable" as that term is defined under MCL 777.40(3)(c) because he had a gun next to him on his side of the bed. While the existence of the gun next to the victim was certainly relevant to the trial court's determination whether the victim was vulnerable, the gun's presence was vastly outweighed by the fact that the evidence showed that the victim was asleep with his face in his pillow when he was shot. In other words, while there may be circumstances in which the presence of a gun next to an alert victim would not justify the assessment of 10 points under OV 10, the evidence in this case demonstrated that the victim was in a completely vulnerable position when he was shot twice. Accordingly, the trial court did not clearly err when it concluded that defendant exploited her domestic relationship with the victim who was vulnerable when he was killed.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that even if this Court were to conclude that the trial court did not clearly err when it assessed 25 points under OV 6 and 10 points under OV 10, her trial counsel was ineffective for failing to make any objection to the trial court's assessments. Defendant contends that reasonable trial counsel would have used every opportunity available to introduce the necessary facts and legal arguments to obtain a lower sentence and there is no reasonable explanation why her trial counsel did not argue that the factors in support of a lower sentence supported proper objections under OVs 6 and 10. We disagree.

The Michigan and United States Constitutions require that criminal defendants receive effective assistance of counsel in their defense. *Shaw*, 315 Mich App at 672, citing US Const Am VI; Const 1963, art 1, § 20. "The proper standard for attorney performance is that of reasonably effective assistance." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A defendant seeking relief for ineffective assistance in this context must meet *Strickland*'s familiar two-pronged standard by showing (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014) (quotation marks and citation omitted). This Court presumes that a defendant received effective assistance of counsel, and "the defendant bears a heavy burden of proving otherwise." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (quotation marks and citation omitted).

In claiming ineffective assistance of counsel, a defendant must identify the "acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 US at 690. This Court in turn evaluates "whether the trial attorney's acts or omissions were outside the wide range of professionally competent assistance." *People v Green*, 322 Mich App 676, 684; 913 NW2d 385 (2018) (quotation marks and citation omitted), overruled in part on other grounds by *People v Peeler*, 509 Mich 381, 394 (2022). "Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion." *People v Hardy*, 494 Mich 430, 445; 835 NW2d 340 (2013) (quotation marks and citation omitted). A defendant may demonstrate prejudice by establishing that correcting a scoring error would have

altered the guidelines range and required the trial court to resentence the defendant. See *People v McFarlane*, 325 Mich App 507, 538; 926 NW2d 339 (2018).

Defendant contends that her trial counsel was ineffective for failing to raise a challenge to the trial court's assessments of OVs 6 and 10 at sentencing because the facts used by trial counsel to recommend a sentence at the bottom of the guidelines range also support defendant's arguments under OV 6 and 10, and there was no reasonable explanation for why trial counsel did not make the arguments. As explained in more detail above, defendant is not entitled to resentencing on the basis of the errors alleged on appeal. And because ineffective assistance of counsel cannot be predicated on a meritless motion, defendant has not demonstrated that trial counsel's representation fell below an objective standard of reasonableness. See *Hardy*, 494 Mich at 445.

Affirmed.

/s/ Michael F. Gadola
/s/ Kirsten Frank Kelly
/s/ James Robert Redford

-8-