*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RONALD ELDRIDGE CHALMERS,

Defendant-Appellant.

UNPUBLISHED
September 15, 2025
10:24 AM

No. 369357
Wayne Circuit Court
LC No. 21-006240-01-FC

Before: LETICA, P.J., and RICK and BAZZI, JJ.

PER CURIAM.

Defendant, Ronald Eldridge Chalmers, appeals as of right his jury trial convictions of assault with intent to murder (AWIM), MCL 750.83, and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Chalmers was sentenced as a fourth-offense habitual offender, MCL 769.12, to 7 to 20 years' incarceration for the AWIM conviction, and two years' incarceration for the felony-firearm conviction, to be served consecutively. We affirm Chalmers's convictions, but we vacate his sentences and remand to the trial court to resentence Chalmers under the correctly scored sentencing guidelines.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises out of the nonfatal shooting of complainant, Renard Ward ("Ward"), following an altercation between Chalmers and Ward. Ward and Vykeisha Hayes ("Hayes") were in a relationship for six years, but they broke up three days before the subject dispute. Hayes was also romantically involved with Chalmers, notwithstanding Chalmers's long-term acquaintanceship with Ward. On December 27, 2020, at approximately 12:25 a.m., Ward arrived at Hayes's residence, and the two had a conversation about rekindling their relationship. Ward denied becoming verbally or physically aggressive during their discussion. Chalmers subsequently arrived on the premises, and when Chalmers stepped out of his car, Ward informed Chalmers, "[T]his don't [sic] have anything to do with you." Chalmers allegedly walked back to his vehicle and retrieved his gun as a reaction. After Ward remarked to Chalmers, "[C]ome on, man, you gonna shoot me," Chalmers fired his gun. Ward claimed Chalmers shot him multiple times, with three bullets striking Ward in his lower abdomen and legs, as Ward ran away into a

-1-

neighbor's backyard. Ward eventually called his cousin for assistance, and his cousin accompanied him to the hospital. Because of the injuries arising from the gunshot wounds, Ward required surgery on his right knee and the removal of a bullet from his kidney; Ward also maintained a bullet fragment in his knee. Ward denied possessing a weapon during the confrontation.

Chalmers testified that he arrived at Hayes's residence on December 27, 2020, at about 2:00 a.m., because he was picking up Hayes to take her home with him. After Chalmers heard Hayes screaming, he acquired his gun from his car and loaded the firearm. Ward was purportedly "manhandling" Hayes and "trying to throw her down on the ground," and Chalmers directed Hayes to leave the scene. Ward then "opened up his coat and showed [Chalmers] that he had a gun[,]" and Ward "made an action like he was getting ready to use [the gun]" against Chalmers. In response, Chalmers shot Ward twice, before Ward allegedly turned around and fired once at Chalmers. Chalmers subsequently fired his gun twice more at Ward. Law enforcement eventually recovered Chalmers's firearm from the basement ceiling of his residence, and three spent shell casings outside Hayes's home. A forensic analysis established the casings were fired from Chalmers's gun.

Following a two-day jury trial, Chalmers was convicted and sentenced as provided earlier. The trial court denied Chalmers's motion for a new trial, which raised claims of great weight of the evidence and ineffective assistance of counsel. This appeal ensued.

## II. ANALYSIS

## A. GREAT WEIGHT OF THE EVIDENCE

Chalmers argues that his convictions were against the great weight of the evidence. We disagree.

This Court reviews a trial court's denial of a motion for a new trial, on the basis of the great weight of the evidence, for an abuse of discretion. *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008) (citation omitted). "An abuse of discretion occurs when a trial court chooses an outcome falling outside the range of reasonable and principled outcomes." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). A verdict is contrary to the great weight of the evidence if "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Anderson*, 341 Mich App 272, 276-277; 989 NW2d 832 (2022) (quotation marks and citation omitted). The cited standard is only met when the evidence does not reasonably support the verdict, and the verdict "was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *Id*. at 277 (quotation marks and citation omitted). Conflicting testimony and issues of witness credibility are generally insufficient grounds to grant a new trial. *Lacalamita*, 286 Mich App at 469-470. "Questions regarding credibility are not sufficient grounds for relief unless the testimony contradicts indisputable facts or laws, the testimony is patently incredible or defies physical realities, the testimony is material and . . . so inherently implausible that it could not be believed by a reasonable juror, or the testimony has been seriously impeached and the case is marked by uncertainties and discrepancies." *People v Solloway*, 316 Mich App 174, 183; 891 NW2d 255 (2016) (alteration in original; quotation marks and citation omitted).

Chalmers first contends his convictions were against the great weight of the evidence because the evidence supported his theory that he acted in self-defense. "At common law, the affirmative defense of self-defense justifies otherwise punishable criminal conduct, usually the killing of another person, 'if the defendant honestly and reasonably believes his life is in imminent danger or that there is a threat of serious bodily harm and that it is necessary to exercise deadly force to prevent such harm to himself.' " *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010), quoting *People v Riddle*, 467 Mich 116, 127; 649 NW2d 30 (2002). "The reasonableness of a person's belief regarding the necessity of deadly force depends on what an ordinarily prudent and intelligent person would do on the basis of the perceptions of the actor." *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013) (quotation marks and citation omitted). Generally, "a defendant does not act in justifiable self-defense when he or she uses excessive force or when the defendant is the initial aggressor." *Id*.

"With the enactment of the Self-Defense Act (SDA), MCL 780.971 *et seq*., the Legislature codified the circumstances in which a person may use deadly force in self-defense or in defense of another person without having the duty to retreat." *Dupree*, 486 Mich at 708. "Specifically, the SDA modified the common law's duty to retreat that was imposed on individuals who were attacked outside their own home or were not subjected to a sudden, fierce, and violent attack." *Guajardo*, 300 Mich App at 35 (quotation marks and citation omitted). MCL 780.972(1) of the SDA states, in relevant part:

> An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if... :
>
> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

"Once a defendant satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution bears the burden of disproving the affirmative defense of self-defense beyond a reasonable doubt." *Dupree*, 486 Mich at 712. To resolve whether the jury properly determined that the prosecution refuted a defendant's claim of self-defense beyond a reasonable doubt, it is pertinent to determine whether "the circumstances justified his actions." *Id*. at 707 (quotation marks and citation omitted).

We conclude that the prosecution sufficiently disproved Chalmers's self-defense claim, and therefore the trial court did not abuse its discretion by denying a new trial on this basis. Chalmers asserts that he acted in self-defense because Ward was armed and intended to injure him. Chalmers further argues that he felt it necessary to acquire his own gun and shoot at Ward because he believed that he was in imminent danger of great bodily harm, as Ward was the initial aggressor and the first person to produce a firearm. Other than this testimony, the record does not support Chalmers's assertion that Ward possessed or used a weapon against Chalmers, which would have necessitated Chalmers's use of force as a means of self-defense, and the jury was entitled to reject Chalmers's testimony as not credible. See *People v Roper*, 286 Mich App 77, 89-90; 777 NW2d 483 (2009) (opining that while the defendant alleged that the complainant initiated the underlying

confrontation, "none of this evidence impeached the evidence supporting the verdict to the extent that it was robbed of any probative value or contradicted the physical facts," and, "the jury was free to reject defendant's claim that he acted in the heat of passion, and we will not second-guess that determination"). Further, Chalmers contradicted himself regarding the sequence of events, because he testified that he retrieved his gun before confronting Ward as Ward was allegedly assaulting Hayes, and he further acknowledged that he continued firing his gun at Ward even after Ward ran away. Additionally, law enforcement solely recovered shell casings belonging to Chalmers's firearm from the premises, despite Chalmers's assertion that Ward fired his gun.

Chalmers essentially "urges this Court to conclude that his version of events was more credible than the evidence offered by the prosecution." *Anderson*, 322 Mich App at 632-632. However, absent exceptional circumstances, conflicting testimony is not a ground for reversal when a defendant brings a great weight of the evidence challenge, and Chalmers does not argue that such circumstances occurred in this case. *Anderson*, 341 Mich App at 277. Moreover, "the resolution of credibility questions is within the exclusive province of the jury," not this Court. *Lacalamita*, 286 Mich App at 470. Ultimately, the trial court instructed the jury regarding self-defense, and the jury disbelieved Chalmers's self-defense theory. A review of the record indicates that this denial was not against the great weight of the evidence, and the trial court did not abuse its discretion when it denied Chalmers's motion for a new trial on this ground.

Chalmers alternatively argues that his convictions were against the great weight of the evidence because the record did not establish he had the specific intent to kill Ward during the underlying altercation. Chalmers was convicted of AWIM and felony-firearm. "In a criminal proceeding, the defendant has a constitutional right to have the prosecution prove his or her guilt beyond a reasonable doubt . . . ." *People v Likine*, 492 Mich 367, 407; 823 NW2d 50 (2012). This reasonable-doubt requirement was "developed to safeguard men from dubious and unjust convictions, with resulting forfeitures of life, liberty and property." *In re Winship*, 397 US 358, 362; 90 S Ct 1068; 25 L Ed 2d 368 (1970). To prove that a defendant committed AWIM, the following elements must be established: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Anderson*, 322 Mich App 622, 632; 912 NW2d 607 (2018) (quotation marks and citation omitted). AWIM is a specific intent crime. *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005). Thus, to establish the second element, a prosecutor must prove that the defendant had the specific intent to kill. *Id*.

Because it is often difficult to prove a defendant's intent directly, "minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). A jury can infer intent from the defendant's actions, not just their statements. *People v Cameron*, 291 Mich App 599, 615; 806 NW2d 371 (2011). The weapon or instrument used by a defendant may be considered and permit the inference of an intent to kill from a defendant's use of a dangerous weapon. *People v DeLisle*, 202 Mich App 658, 672; 509 NW2d 885 (1993). Intent to kill may further be inferred from, *inter alia*, the complainant's injuries. *People v Everett*, 318 Mich App 511, 531 n 10; 899 NW2d 94 (2017).

During the underlying altercation, Chalmers withdrew his gun and he shot Ward, a romantic rival, multiple times, with Ward suffering injuries to his kidney and knee because of the resulting wounds. See *People v Ericksen*, 288 Mich App 192, 196; 793 NW2d 120 (2010)

("Defendant's intent could be inferred from any facts in evidence, including the nature, extent, and location of [the complainant's] wounds.") Further, Chalmers acknowledged that he continued firing at Ward, even as Ward was fleeing the premises. Chalmers contends that he lacked the specific intent to kill because he solely shot at Ward's legs. But this Court has held "actual injury—while admissible as evidence of an actor's intent—is not an element of [] AWIM." *Everett*, 318 Mich App at 531 n 9; see also *People v Stevens*, 306 Mich App 620, 629; 858 NW2d 98 (2014) ("Although actual injury to the victim is not an element of the crime, injuries suffered by the victim may also be indicative of a defendant's intent.") (Citations omitted). This further supports the conclusion that the fact the gunshot struck Ward's knee, in part, does not establish that Chalmers did not act with the intent to kill; rather, the pertinent fact is that Chalmers fired several shots at Ward. Accordingly, the jury's finding of Chalmers's specific intent to kill was not contrary to the great weight of the evidence; thus, the trial court did not abuse its discretion in denying a new trial.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Chalmers asserts his trial counsel was ineffective for failing to investigate and retain a critical witness to support his theory of the case. We disagree.

An ineffective assistance of counsel claim "presents a mixed question of fact and constitutional law." *People v Hoang*, 328 Mich App 45, 63; 935 NW2d 396 (2019) (quotation marks and citation omitted). "A judge must first find the facts, then must decide whether those facts establish a violation of the defendant's constitutional right to the effective assistance of counsel." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023) (quotation marks and citation omitted). "Constitutional questions are reviewed de novo, while findings of fact are reviewed for clear error." *Hoang*, 328 Mich App at 63. "The trial court's findings are clearly erroneous if, after we have reviewed the entire record, we are definitely and firmly convinced that it made a mistake." *People v Johnson*, 342 Mich App 90, 94; 992 NW2d 668 (2022) (quotation marks and citation omitted). Because no *Ginther*[1] hearing was conducted, this Court's review "is limited to mistakes apparent on the record." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

The United States Constitution and Michigan Constitution guarantee a defendant the right to the assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. "This right guarantees the *effective* assistance of counsel." *Yeager*, 511 Mich at 488, citing *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984) (emphasis added). "To establish a claim of ineffective assistance, 'a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different.' " *People v Haynes*, 338 Mich App 392, 429; 980 NW2d 66 (2021), quoting *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

outcome." *People v Abcumby-Blair*, 335 Mich App 210, 228; 966 NW2d 437 (2020) (quotation marks and citation omitted).

To establish deficient performance, a defendant must prove that "counsel made errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment." *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015) (quotation marks and citation omitted). Counsel is presumed effective, and a defendant claiming ineffective assistance "must overcome the strong presumption that counsel's challenged actions were sound trial strategy." *Id*. "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). "The inquiry into whether counsel's performance was reasonable is an objective one and requires the reviewing court to determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks and citation omitted). "This standard requires a reviewing court to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did." *Id*. (quotation marks and citation omitted). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76–77; 601 NW2d 887 (1999).

Chalmers contends that his counsel's omission of Hayes as a witness fell below an objective standard of reasonableness. "An attorney's decision whether to retain witnesses . . . is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). "Yet a court cannot insulate the review of counsel's performance by calling it trial strategy." *Trakhtenberg*, 493 Mich at 52. Counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 US at 691. Thus, "a court must determine whether the strategic choices [were] made after less than complete investigation, and any choice is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Trakhtenberg*, 493 Mich at 52 (alteration in original; quotation marks and citation omitted).

While Hayes's testimony may have been pertinent, as she was allegedly the sole witness to the altercation between Chalmers and Ward, Chalmers neglects to establish the factual predicate for this contention, such that defense counsel's failure to investigate or present Hayes as a witness constituted deficient performance. See *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003) (stating, "Defendant offers no proof that an expert witness would have testified favorably if called by the defense. Accordingly, defendant has not established the factual predicate for his [ineffective assistance] claim"); see also *Carbin*, 463 Mich at 601 (opining, "Absent any evidence regarding the extent of trial counsel's pretrial investigation, especially with respect to the potential testimony of [the two witnesses], we conclude that defendant failed to establish a necessary factual predicate of this part of his ineffective assistance of counsel claim"). Chalmers does not present an affidavit of Hayes's proposed testimony, nor does he otherwise indicate how Hayes's appearance as a witness would have benefited his case or substantiated his self-defense premise. See *Solloway*, 316 Mich App at 190 ("Because defendant fails to explain what this missing testimony would have been or how it would have assisted his case, he has not

demonstrated that defense counsel's failure to procure an expert medical witness or call [the complainant's] counselor as a witness contravened trial strategy . . . .")

To the contrary, Chalmers's presentence investigation report (PSIR) suggests that Hayes would have corroborated the prosecution's theory of Chalmers's conduct:

> On 1/5/21, Detective Karen Williams interviewed [] Hayes who appeared at the 8th Precinct. Ms. Hayes stated [Chalmers] was at the location where she and [Chalmers] were in the process of leaving her house to go to the store. Ms. Hayes reported she was met by [Ward] at her driveway demanding she not go anywhere. [Chalmers] intervened at which time he and [Ward] began to argue. Ms. Hayes stated she then heard three to four gunshots while standing in the driveway. Ms. Hayes stated she was screaming, telling and pleading with [Chalmers] not to shoot. Ms. Hayes then ran to [Ward] to render aid and attempt to call 911, where [Ward] declined and informed Ms. Hayes his friend Brandon would pick him up to take him to the hospital.

Further, during sentencing, when the trial court inquired whether Chalmers reviewed the PSIR, and whether its contents were "true and accurate," Chalmers responded affirmatively. Under these circumstances, Chalmers has not provided adequate factual support for his claim that trial counsel was ineffective for failing to present Hayes as a witness; rather, his contentions are speculative. Accordingly, Chalmers cannot prevail on his ineffective assistance of counsel claim.

## C.  SENTENCING

Chalmers argues that the trial court erred in assessing offense variable (OV) 3, resulting in the imposition of a sentence beyond the properly scored sentencing guidelines range. We agree.

Generally, "[u]nder the sentencing guidelines, a trial court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Abbott*, 330 Mich App 648, 654; 950 NW2d 478 (2019). Clear error exists when this Court is "left with a definite and firm conviction that a mistake was made." *Id*. "When making these factual findings, the trial court "may consider all record evidence . . . ." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Abbott*, 330 Mich at 654 (quotation marks and citation omitted).

"Offense variables must be scored giving consideration to the sentencing offense alone, unless otherwise provided in the particular variable." *People v McGraw*, 484 Mich 120, 133; 771 NW2d 655 (2009). "This Court has previously defined 'sentencing offense' in the context of OVs as the crime of which the defendant has been convicted and for which he or she is being sentenced." *People v Carter*, 503 Mich 221, 227; 931 NW2d 566 (2019) (quotation marks and citation omitted).

Chalmers contends that the trial court should have only assessed 10 points instead of 25 points for OV 3 because, although Ward suffered injuries that required medical treatment, there

was no evidence that those injuries were life-threatening or permanently incapacitating. OV 3 considers physical injury to a victim and is properly assessed at 25 points when the victim suffered a "life threatening or permanent incapacitating injury." MCL 777.33(1)(c). OV 3 is assigned 10 points when the victim incurred a "bodily injury requiring medical treatment," regardless of whether such treatment was actually procured. MCL 777.33(1)(d); MCL 777.33(3). "In scoring OV 3, the focus is not on the defendant's actions; rather, OV 3 assesses whether a *victim's injuries* were life-threatening." *People v Chaney*, 327 Mich App 586, 588; 935 NW2d 66 (2019) (quotation marks and citation omitted).

In this case, Ward asserted that, as a result of the shooting, he required surgery on his right knee, the removal of a bullet from his kidney, and a bullet fragment remained in his knee. Ward further claimed that he "had to learn how to walk again with both legs," and he was incapable of carrying heavy objects because of his injuries. While OV 3 was initially assigned 10 points, the trial court assessed 25 points for OV 3 over defense counsel's objection at sentencing, opining, "[T]he Court has now had a record developed in which Mr. Ward has indicated that he continues to have life-altering or incapacitation due to the injury that he sustained from the gunshot wound. So that being the case, the Court is going to score 25 points for OV-3."

The trial court's assessment of 25 points was not supported by a preponderance of the evidence. We note that the statute does not define the terms "life-threatening" or "permanent incapacitating injury," but this Court has resolved that the ordinary dictionary definition of "life-threatening" means "capable of causing death: potentially fatal." *Chaney*, 327 Mich App at 589-590 (quotation marks and citation omitted). Accordingly, there must be "some evidence indicating that the injuries were, in normal course, potentially fatal." *Id.* at 590-591 (footnote omitted). This Court has further recognized that "there are many conditions that if not treated can become life-threatening," thus, courts "must take into account the effect of medical treatment." *Id.* at 591 n 4.

We first opine that the record does not establish that Ward suffered a life-threatening injury. While Ward required medical intervention to address the harm to his kidney and right knee because of his gunshot wounds, there was no indication that Ward's life "was placed at risk or more general evidence establishing that the injury suffered was by nature life-threatening . . . ." *Chaney*, 327 Mich App at 591. Indeed, "[i]f the fact that the [complainant's] injuries required significant and ongoing medical treatment by itself established a life-threatening injury, MCL 777.33(1)(d) (10 points for bodily injury requiring medical treatment) would be rendered nugatory." *Id.* at 590 (footnote omitted). Notably, this Court has held that even more severe injuries have been deemed insufficient to warrant an assignment of 25 points under OV 3. See *Chaney*, 327 Mich App at 588-589 (opining when the complainant, a three-year-old child, sustained third-degree burns, was in the hospital for more than a month, had a feeding tube, was given morphine, and had been at risk for infection, that "the evidence did not support a 25-point assessment for a life-threatening injury and that OV 3 should have been scored at 10 points for bodily injury requiring medical treatment"). Additionally, there was no evidence suggesting that Ward required long-term hospitalization, Ward suffered such a serious injury that "heroic measures were needed," Ward's life was ever in danger, or that Ward suffered any complications during his four-day hospital stay. *Id.* at 590-591.

We further opine that the trial court's finding that Ward's injuries were permanently incapacitating was against the preponderance of the evidence. This Court has determined that an assignment of 25 points is warranted when the "evidence available to the trial court was that two

victims of [the] defendant's offense had been severely injured in ways that continued to significantly incapacitate them in their daily lives and that it was very possible they would never fully recover." *People v Teike*, 348 Mich App 520, 527; 19 NW3d 733 (2023). In *Teike*, one complainant required a wheelchair and continued physical therapy because of a broken leg, and the second complainant shared that "she continued to suffer memory and concentration issues as a result of her head injury and that she was 'instructed that it would take some time until the extent and effects of the closed head injury would be known.' " *Id.* Notably, "both victims expressed that there was a significant likelihood that their incapacities would be permanent." *Id.* at 527-528.

In the present case, Ward contended that he had to relearn how to walk, developed arthritis, and was unable to carry heavy objects because of his injuries. But unlike the complainants in *Teike*, Ward did not advance that his injuries materially restricted his day-to-day functioning, rather, Ward asserted, "I have to watch my knee sometimes which way, like, how I work it." Ward further did not describe the severity of his arthritis, nor did he assert that his ailments were incurable or incapable of improvement. While there are circumstances in which injuries arising from a gunshot wound may justify an assessment of 25 points, this Court noted in *People v Rosa*, 322 Mich App 726, 746; 913 NW2d 392 (2018):

> The issue may be more easily considered in the context of a shooting for which a defendant is charged with assault with intent to murder. If the gunshot resulted in the victim's nearly bleeding to death, the victim suffered a life-threatening injury, and OV 3 should be scored accordingly. Conversely, if the defendant was a poor shot and the victim received only a minor wound that did not place his or her life in danger or permanently incapacitate him or her, OV 3 should not be scored at 25 points.

In light of the foregoing, we conclude the 25-point assignment was improper.

Chalmers's total for all offense variables was 80 points, or Level V of the A sentencing grid. As OV 3 was incorrectly assessed, defendant's total OV score would decrease from 80 points to 65 points, with a 10-point assignment for OV 3. The aforementioned change in the total assignment of points would shift the OV level from V to IV, altering Chalmers's sentencing guidelines range. Thus, Chalmers is entitled to resentencing. See *People v Francisco*, 474 Mich 82, 92; 711 NW2d 44 (2006) ("Because defendant's sentence here is based upon an inaccurate calculation of the guidelines range and is, therefore, inconsistent with the law, defendant is entitled to be resentenced.")

We affirm Chalmers's convictions, but we vacate Chalmers's sentences and remand the matter to the trial court for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Michelle M. Rick
/s/ Mariam S. Bazzi